**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  ltfisher@bursor.com

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
888 Seventh Avenue
New York, NY  10019
Telephone: (212) 989-9113
Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PATRICK ROBERTS, on behalf of himself and all others similarly situated,<br><br>                              Plaintiff,<br><br>ASCENT MORTGAGE RESOURCE GROUP LLC and CHRISTOPHER DANIEL ROBINSON,<br><br>                              Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

CLASS ACTION COMPLAINT

Plaintiff Patrick Roberts ("Plaintiff"), individually and on behalf of all others similarly situated, allege the following on information and belief, except that Plaintiff's allegations as to his own actions are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this action against Defendants to stop their practice of sending unsolicited text messages to consumers.  In particular, Defendants text consumers' cellular telephones using an automatic telephone dialing system in order to deliver telemarketing messages without their prior express written consent in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq.* ("TCPA").  Accordingly, Plaintiff seeks damages and injunctive relief for himself and all other similarly situated.

2.      Defendants engaged in telemarketing/advertising, directly and/or through its authorized agents acting on Defendants' behalf, by text messaging cellular telephone numbers throughout California and the greater United States after October 16, 2013, using both an automatic telephone dialing system to deliver a message or short message service (otherwise known as "text messaging" or a "text message") without the prior unambiguous written express consent of the called party.

## PARTIES

3.      Plaintiff Patrick Roberts is, and at all times mentioned herein was, a resident of Vallejo, California and a citizen of the State of California.

4.      Defendants Ascent Mortgage Resource Group LLC is a Colorado corporation with its principal place of business located at 10200 East Girard Avenue, Suite 208, Denver, Colorado 80231.

5.      Defendant Christopher Daniel Robinson is the founder and owner of Defendant Ascent Mortgage Resource Group LLC.  Mr. Robinson, during all times relevant to Plaintiff's claims, specifically, individually, and personally directed and authorized all of the unlawful text messages described herein, and was intimately involved in the program to send these messages, including the selection of the calling equipment.  Mr. Robinson was the guiding spirit and central

figure behind these unlawful text messages being made in the matter they were.

## JURISDICTION AND VENUE

6.      For the reasons stated in in *Mims v. Arrow Financial Services, LLC*, 132 S. Ct. 740 (2012), the Court has federal subject matter jurisdiction under 47 U.S.C. § 227.  This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005, Pub. L. No. 109-2 Stat. 4 ("CAFA"), which, *inter alia*, amends 28 U.S.C. § 1332, at new subsection (d), conferring federal jurisdiction over class actions where, as here: (a) there are 100 or more members in the Class members; (b) some members of the Class members have a different citizenship from Defendant; and (c) the claims of the Class members exceed the sum or value of five million dollars ($5,000,000) in aggregate.  *See* 28 U.S.C. § 1332(d)(2) and (6).

7.      This Court also has federal question jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves violations of a federal statute, the Telephone Consumer Protection Act.

8.      Venue is proper in this Court under 28 U.S.C. § 1391 because Defendants transacts significant business within this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District.

## FACTS COMMON TO ALL CAUSES OF ACTION

**A.      The Telephone Consumer Protection Act of 1991**

9.      In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing practices.  Congress intended to provide consumers a choice how telemarketers may contact them, finding that "[e]vidence presented to Congress indicates that automated or prerecorded calls are a nuisance. . . ." Pub. L. No. 102-243, §12-13 (1991).  "Voluminous consumer complaints about abuses of telephone technology—for example, computerized calls dispatched to private homes—prompted Congress to pass the TCPA."  *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740, 744 (2012).

10.      Among other things, the TCPA prohibits "initiating any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the

prior express consent of the called party. . . ."  According to findings by the Federal

Communications Commission ("FCC"), such calls are prohibited because prerecorded telephone

calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls are

costly and inconvenient.  The FCC has stated that telemarketing occurs when a call is initiated and

transmitted to a person for the purpose of promoting property, goods, or services.  47 C.F.R.

§64.1200(a)(2)(iii); 47 C.F.R. §64.1200(f)(12); 18 FCC Rcd. 14014, 14098 ¶141 (FCC 2003).

11.     The FCC has issued rulings clarifying that in order to obtain an individual's consent,

a clear, unambiguous, and conspicuous written disclosure must be provided by the individual.

2012 FCC Order, 27 FCC Rcd. at 1839 ("[r]equiring prior written consent will better protect

consumer privacy because such consent requires conspicuous action by the consumer—providing

permission in writing—to authorize autodialed or prerecorded telemarketing calls. . . .").

12.     According to 47 U.S.C. §227(a)(1), the ban on telephone calls made by using an

automatic telephone dialing system ("ATDS") extends to unsolicited autodialed text messages sent

to cellular phones.  *Gager v. Dell Fin. Servs., Inc.,* 727 F.3d 265, 269 n.2 (7th Cir. 2013); FCC

Declaratory Ruling, 27 F.C.C.R. 15391, 2012 WL 5986338 (Nov. 29, 2012).  The Federal

Communications Commission has declared that unsolicited text messages are "[a]nnoying and

time-consuming," as well as "[i]ntrusive and costly."  FCC Guide, Spam: Unwanted Text

Messages and Email, http://www.fcc.gov/guides/spam-unwanted-text-messages-and-email.

Pursuant to 47 U.S.C. §227(b)(1)(A)(iii), it is illegal for Defendants to send unsolicited text

messages to its users without their prior consent.

**B.     Defendants' Text Messages To Plaintiff**

13.     Over the past year, Defendants, using the short code SMS number 62701, texted

Plaintiff's cell phone at (707) *** - **** with multiple unsolicited non-emergency text messages.

14.     On or about June 11, 2017 at 12:32 PM, Plaintiff received the following text

message from 62701:  "Notice-Justine Your $5,000 loan is Ready! Tap here;

https://goo.gl/UJCgHJ  Bad Credit & Multiple Submits OK! Reply STOP cancel msg & data rates

may apply."  The link provided now redirects to a blank webpage at iclickinteractive.com.

15.     On June 19, 2017, Plaintiff received the following text message from 62701: "Notice-Justine Your $5,000 loan is Ready! $5,000 loan is Ready! Tap here: https://goo.gl/QAgSV3." This link also now redirects to a to a blank webpage at iclickinteractive.com.

16.     Plaintiff's name is not Justine and he does not know anyone named Justine. Accordingly, on June 19, 2017, Plaintiff responded to the text message from 62701 with the word "Stop."

17.     A few minutes later, Plaintiff received the following text message from 62701: "You are opted out of inbound RTO and will no longer receive msgs. For info visit united-rent-to-own.com Msg & Data Rates Apply."

18.     United-rent-to-own.com is registered to Defendant Christopher Robinson.

19.     United-rent-to-own.com contains a link to http://free-renttoown.com which lists its address as 10200 E. Girard Blvd. Denver, Colorado, 80231, the same address at which Defendant Ascent Mortgage Resource Group LLC is registered.

20.     United-rent-to-own.com lists its phone number as 1-800-238-1975. When dialed, a recording says "Thank you for calling Rent To Own Resource Group." There are also numerous online complaints by consumers alleging that they received calls from Defendant Ascent Mortgage Resource Group LLC using this same phone number.

21.     United-rent-to-own.com lists its address as 7500 W Mississippi Ste A-90 Lakewood, Co, 80226. Archive.org shows that Defendant Ascent Mortgage Resource Group LLC used to list this same address on http://www.ascentrenttoown.com.

22.     Plaintiff received similar text messages from 62701 on February 15, 2018 at 8:26 AM, February 19, 2018 at 8:36 AM and on February 22, 2018 at 5:03 AM.

23.     In response to this last text message, Plaintiff again replied "Stop." Minutes later, Plaintiff received the following text message from 62701: "ASCENT MORTGAGE: You have been removed from mobile alerts. Removed by mistake? Reply OOPS to rejoin."

24.     Given the above, the inevitable conclusion is that all of the text messages that

Plaintiff received from 62701 were made by Defendants.

25.    Defendants sent these text messages in order to promote, market, and to otherwise advertise their products and services.

26.    Prior to the text messages at issue in this action, Plaintiff never provided Defendants with prior express written consent to text him.

27.    Given the size of Defendants' business, the generic nature of the text messages that Plaintiff received, and the number of complaints about Defendants online, there is little doubt that Defendants sent similar or identical text messages to thousands of other consumers as well.

28.    Defendants have caused actual concrete harm to Plaintiff and the Class members, because such individuals have been subjected to invasion of privacy, unwanted/intrusive text messages, have been required to pay cell phone service providers for unwanted text messages, lost use of their cell at the time of receiving the unwanted text message, wasted time on receipt of and reading of the unwanted text messages, and have been subjected to increased electricity charges from receipt of unwanted text messages.

## CLASS ACTION ALLEGATIONS

29.    Plaintiff brings this action on behalf of himself and on behalf of all other persons similarly situated.  Plaintiff proposes the following class ("Class"):

> All persons within the United States who received a text message from Defendants to their cellular telephone, at any time from four years prior to the filing of this Complaint through the dissemination of class notice, where the text message was sent through the use of an automatic telephone dialing system.

30.    Plaintiff does not know the exact number of members in the Class, but reasonably believes based on the scale of Defendants' business, and the number of unsolicited text messages that they received, that the classes are so numerous that individual joinder would be impracticable.

31.    Plaintiff and all members of the Class members have been harmed by the acts of Defendants in the form of multiple involuntary telephone and electrical charges, the aggravation, nuisance, and invasion of privacy that necessarily accompanies the receipt of unsolicited and harassing text messages, the and violations of their statutory rights.

32.     The disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.  The Class members can be identified easily through records maintained by Defendants.  There are well-defined, nearly identical, questions of law and fact affecting all parties.  The questions of law and fact involving the class claims predominate over questions that may affect individual members of the Class members.  Those common questions of law and fact include, but are not limited to, the following:

a.  Whether Defendants sent Plaintiff and Class members text messages;

b.  Whether Defendants conduct was knowing and/or willful;

c.  Whether the text messages that Defendants sent violate the TCPA;

d.  Whether Defendants sent non-emergency text messages to Plaintiff and the Class members;

e.  Whether Defendants and/or its agents used an automatic telephone dialing system to transmit the unsolicited text message;

f.  Whether Defendants transmitted the unsolicited text messages to Plaintiff and Class members without consent;

g.  Whether Defendants are liable for damages; and

h.  Whether Defendants should be enjoined;

33.     Plaintiff has retained counsel experienced in handling class action claims involving violations of federal and state consumer protection statutes.

34.     A class action is the superior method for the fair and efficient adjudication of this controversy.  Class wide relief is essential to compel Defendants to comply with the TCPA.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated and the members of the classes, by definition, did not provide the prior express consent required under the statute to authorize calls to their telephones.

35.     As persons who received text messages on their telephone using an artificial or prerecorded voice, without their prior express written consent, and Plaintiff asserts claims that are typical of each member of the class.  Plaintiff will fairly and adequately represent and protect the

interests of the Class members, and has no interests that are antagonistic to any member of the Class members.

36.     Defendants have acted on grounds generally applicable to the Class members, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class members as a whole appropriate.  Moreover, on information and belief, Plaintiff alleges that the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

**FIRST COUNT**
**TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227, *et seq*.**

37.     Plaintiff incorporates by reference the foregoing paragraphs of this complaint as if fully stated herein.

38.     Defendants utilized an ATDS to send unsolicited text message calls to Plaintiff and Class members' cell phone numbers.

39.     Plaintiff and Class members did not provide Defendants with prior written consent to receive text messages from Defendants.  The foregoing acts and omissions of Defendants constitutes numerous and multiple knowing and/or willful violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227 *et seq*.

40.     As a result of Defendants' violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the classes are entitled to an award of $500.00 in statutory damages for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

41.     As a result of Defendants' knowing and/or willful violations of 47 U.S.C. § 227 *et seq.*, Plaintiff and members of the Class members are entitled to treble damages of up to $1,500.00 for each and every call in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(C).

42.     Plaintiff and members of the Class members are also entitled to and do seek injunctive relief prohibiting such conduct violating the TCPA by Defendants in the future.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant Plaintiff and all members of the Class members the following relief against Defendant:

---

CLASS ACTION COMPLAINT                                                                                          7

   a. Injunctive relief prohibiting such violations of the TCPA by Defendants in the future;

   b. As a result of Defendants' violations of the TCPA, Plaintiff seeks for himself and each member of the Class members $500.00 in statutory damages for each and every text message call that violated the TCPA;

   c. As a result of Defendants' willful and/or knowing violations of the TCPA, Plaintiff seeks for himself and each member of the Class members treble damages, as provided by statute, of up to $1,500.00 for each and every text message call that violated the TCPA;

   d. An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing appropriate classes, finding that Plaintiff is a proper representative of the classes, and appointing the lawyers and law firm representing Plaintiff as counsel for the classes;

   e. Such other relief as the Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.

Dated: February 23, 2018      **BURSOR & FISHER, P.A.**

     By:    */s/ L. Timothy Fisher*
           L. Timothy Fisher

     L. Timothy Fisher (State Bar No. 191626)
     1990 North California Blvd., Suite 940
     Walnut Creek, CA 94596
     Telephone: (925) 300-4455
     E-Mail:  ltfisher@bursor.com

     **BURSOR & FISHER, P.A.**
     Scott A. Bursor (State Bar No. 276006)
     888 Seventh Avenue
     New York, NY  10019
     Telephone: (212) 989-9113

Facsimile:  (212) 989-9163
E-Mail: scott@bursor.com

*Attorneys for Plaintiff*